**ANTHONY et al. v. SHERMAN.**

No. 5550.

Circuit Court of Appeals, Fourth Circuit.

Feb. 17, 1947.

J. Hanson Boyden, of Washington, D. C. (Stone, Boyden & Mack, of Washington, D. C., Fred W. Bynum, of Rockingham, N. C., and Martha B. Conway, of Richmond, Va., on the brief), for appellants.

L. R. Varser, of Lumberton, N. C., (Varser, McIntyre & Henry, of Lumberton, N. C., on the brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a judgment for plaintiff in a patent case finding infringement and awarding damages and an injunction. Plaintiff is the owner of patent No. 2,369,415, covering a method of repairing cracked cylinder heads and blocks, applied for October 5, 1943 and granted February 13, 1945. The defendant Anthony is the operator of a repair shop and the defendant Goodwin is one of his employees, who was employed by plaintiff in the year 1938. Defendants have been engaged in repairing cracked cylinder heads and blocks by a method which plaintiff contends is an infringement of his patent. They contend that the method which they are now using is identical with the method used by them in 1938 and say that, if it is covered by plaintiff's patent, the patent is necessarily invalid because used publicly both by them and the plaintiff for several years prior to the date of application. The patent contains only one claim, which is as follows: "The method of repairing cracked cylinder heads and blocks, consisting in subjecting the cylinder head to heat, of substantially 500 degrees F., spreading the walls of the crack to substantially V-shape while the cylinder head is in a heated condition, forcing portions of the walls of the V-shaped crack into the bottom of the crack providing right angled surfaces at the bottom of the crack, placing a filler bar having a curved surface and a straight surface, within the bottom of the crack subjecting the filler bar to pressure to form the

filler bar into the shape of the bottom of the crack, pressing portions of the cylinder head into engagement with the filler bar, tying the filler bar within the crack, and finally directing pressure to the cylinder block adjacent to the edges of the crack, forcing the walls of the crack together, completely covering the filler bar."

The patent in suit is in no sense a pioneer patent, and the file wrapper shows that all of the claims at first proposed were rejected on prior patents. The file wrapper says in this connection: "Claims 1-3 are rejected as unpatentable over Brewer in view of Harman or Haas, all above cited. Brewer discloses the method of repairing cracked machine parts by the method steps of treating the crack, inserting a metal filler into said crack, forcing portions of the metal of the machine part into engagement with the filler material and covering the metal filler as shown by Fig. 4 and its description in Brewer. Harman or Haas discloses the method of pressing metal as required to close an opening or crack to form surface of a desired shape and smoothness, which may be substituted for the method of pressing shown by Brewer. In so far as such a substitution is concerned, it is not believed that it required a 'creative flash of genius', beyond the skill of the art." A reconsideration of the claims was asked and they were again rejected on the citation of three additional patents, but it was intimated that one claim would be allowed if amended to set forth the degree of temperature employed in the method. The claim was so amended setting forth the temperature of substantially 500 degrees F.; and, as so amended, it was allowed. It is worthy of note that no evidence was adduced showing that the temperature thus made critical was employed by the defendants in their process; but in the view that we take of the case this is relatively unimportant.

In the light of the file wrapper, as well as of plaintiff's testimony, it is clear that the heart of the invention is the so-called tie-in step described in the claim as "pressing portions of the cylinder head into engagement with the filler bar, tying the filler bar within the crack". Plaintiff testified that this step in his method was not discovered or developed by him until December 1942, and that it was this that made the method a success. There could not, of course, be infringement of the patent unless this as well as the other steps in the method of the patent was used; but there is absolutely no evidence that it was used. Plaintiff attempts to prove infringement by showing that Goodwin and Hyatt, another of his ex-employees whom Anthony had employed, were using for Anthony the method that they had learned from him; but it was several years prior to plaintiff's development of the tie-in step that these employees worked for him, and there is no showing whatever that they or Anthony used the tie-in step. What evidence there is on the subject, is to the contrary. Thus plaintiff, when asked whether defendant Anthony used the same method or whether there was a variance, answered, "Yes, there is a slight variation. That is, of the tie-in which made the method secure. He used everything else but the tie-in." With respect to Vance Goodwin he testified: "Vance Goodwin came to my shop one night and he said, 'let me repair this head for you, I will show you I am doing it just like you are doing it.' I laughed at him and said, 'sure, go ahead.' He picked up my tools and he repaired the head and he repaired right straight through until it came to the tie-in, and then when he came to the tie-in, he jumped it, because he didn't know it, because that had been concealed by me at Darlington, South Carolina, where it was perfected in 1942, and it was finished on December 2nd, of 1942."

Plaintiff further testified that his notice of infringement was based on what was learned by a night watchman, Jim Floyd, whom he sent to Anthony's shop in 1945 to observe the method there used by defendants. As to this he said:

"Q. At the time of Floyd's visit he found the defendant was not using the tie-in method? A. Yes, he found he was not using the tie-in, that was before they had had time to get this patent, to get the copy of the patent."

Plaintiff was asked specifically if he had knowledge of any fact showing that the tie-in step was used by defendant and admitted

that he had not. The testimony with respect to this is as follows:

"Q. If you have knowledge of any fact that shows he is using the tie-in method, tell us what it is, that is if he has been using it since you got your patent? A. I have not checked one of the heads, I mean, since the patent, but it was checked before.

"Q. Was the tie-in then used? A. No sir, everything but that was used.

"Q. He had used everything except the tie-in when you checked it? A. Yes, sir."

The only thing tending to show the use of the process of the patent that we have been able to find is an affidavit of Goodwin, which he says was obtained from him when he was drinking, but which, in the light of the testimony above quoted, has no probative value in any event; for while Goodwin says in the affidavit that Anthony is repairing cracked cylinder heads in the manner covered by the patent, he also says that he has been repairing them in the same manner since 1938. Of course, if this is true, the patent is void for prior use; but it is clear from the evidence that no one was using the tie-in step prior to 1942 and the affidavit evidently does not refer to this but is using general terms to describe the process of the patent, without reference to the tie-in step, under the misapprehension that the use of any part of the patented process is an infringement.

There is thus no evidence to justify a finding that the tie-in step of the patented process was ever used by either of the defendants; and, this being true, a finding of infringement is not justified. There is no evidence of the substitution of an equivalent; and the law is well settled that the claim of a process patent is not infringed where any one of the steps, or series of acts, set forth in the claim as constituting the process, is omitted, unless some equivalent step or act is substituted for it. Royer v. Coupe, 146 U.S. 524, 13 S.Ct. 166, 36 L.Ed. 1073; Id., C.C.Mass., 38 F. 113; Vulcanite Co. v. Davis, 102 U.S. 222, 26 L.Ed. 149; Mowry v. Whiting, 14 Wall. 620, 20 L.Ed. 860; Universal Oil Products Co. v. Globe Oil & Refining Co., 322 U.S. 471, 485, 64 S.Ct. 1110, 88 L.Ed. 1399, 40 Am.Jur. 646; Walker on Patents 6 ed., vol. 1, p. 487, par. 399.

We are impressed, as was the just and learned judge below, by the evidence showing that the defendant Anthony hired employees of plaintiff for the evident purpose of using in his own business the methods of repair that they had learned from plaintiff; but the trouble with plaintiff's case is that these employees worked for plaintiff before the tie-in step of the patented process was evolved and the evidence does not justify a finding that it was ever used by them. Since infringement of the patent is not shown, it is not necessary for us to inquire into its validity. The judgment appealed from will be reversed.

Reversed.