**KENNAMETAL, Inc. v. AMERICAN CUTTING ALLOYS, Inc.**

Civ. No. 606.

District Court, D. Delaware.

April 2, 1948.

See also, D.C., 5 F.R.D. 180.

William S. Potter (of Southerland, Berl & Potter), of Wilmington, Del., Clarence B. Des Jardins and Justin S. Compton (of Des Jardins & Compton), both of Cincinnati, Ohio, and Robert M. Zacharias, of Latrobe, Pa., for plaintiff.

Edwin D. Steel, Jr. (of Morris, Steel, Nichols & Arsht), of Wilmington, Del., Joseph O. Ollier, of New York City, and

Carl F. Schaffer (of Owen & Owen), of Toledo, Ohio, for defendant.

LEAHY, District Judge.

Defendant's patents in suit[1] cover the manufacture of sintered hard carbide compositions. Plaintiff manufactures hard carbide compositions for cutting tools. Controversy arose as to whether plaintiff was and is an infringer. The action is one for declaratory judgment. 28 U.S. C.A. § 400.

In its answer and opening statement defendant admitted that certain of the patents and claims are not infringed by plaintiff's product and processes and moved to dismiss as to the same. The ruling on this motion becomes unnecessary in view of the decision to be made here.

It appears to be the case that defendant considers its patents cover broadly all multi-carbide cutting compositions; but I think its patents are limited to certain methods claimed to be of high efficiency for making such compositions. Upon this basis the findings of infringement will be made.[2]

Re. 22,207

1. Claim 1 analyzed into its elements reads:

"1. In a method of producing a hard metal composition, particularly for tool elements, containing hard and refractory carbide crystal structures of at least two different elements other than carbon selected from the (third,) fourth, fifth and sixth group of the periodic system and considerably lower melting auxiliary metal substantially of the iron group in amounts from about 3 to 22%, the steps of

"(1) preforming said structures substantially in solid solution (a) in a first cycle including a heat treatment at a temperature of about 1600° to about 2000° C. and

"(2) consolidating in a subsequent cycle the mass so obtained with the auxiliary metal admixed in powdery state (a) by heat treatment at elevated temperature up to about 1400° to about 1600° C."

2. Claim 2, so analyzed, reads: "2. In a method of producing a hard metal composition, particularly for tool elements, containing hard and refractory carbide crystal structures of at least two different elements other than carbon selected from the (third), fourth, fifth, and sixth group of the periodic system and considerably lower melting auxiliary metal substantially of the iron group in amounts from 3 to 22%, the steps of

"(1) forming substantially solid solutions of said structures (a) by mixing them and (b) heat-treating the mixture at a temperature of about 1600° to 2000° C.,

"(2) intimately mixing the mass so obtained with the auxiliary metal in powdery state and

"(3) sintering this mixture at elevated temperature up to about 1400° to 1600° C."

3. Claim 3 reads:

"3. In a method of producing a hard metal composition, particularly for tools or tool elements, containing in substantial amounts hard and refractory carbide crystal structures of at least two different elements other than carbon selected from the (third,) fourth, fifth and sixth group of the periodic system and considerably lower melting auxiliary metal substantially of the iron group in amounts from about 3 to 22%, the steps of

"(1) forming solid solutions of said structures (a) by mixing them and (b) heat-treating the mixture at a temperature of about 1600° to about 2000° C.,

"(2) finely powdering and intimately mixing the mass so obtained with powdered auxiliary metal,

"(3) and subsequently sintering this mixture at elevated temperature up to about 1400 to about 1600° C."

---

[1] U. S. patents Nos. Re. 22,207, Re. 22,166, Re. 22,073, Re. 22,074, 2,246,387, 2,265,010, and 2,356,009.

Defendant's answer admitted, among other things, that patent 2,246,387, claims 1 to 7 of patent 2,265,010, and claims 1 and 2 of patent 2,356,009 were not infringed by plaintiff by manufacturing its hard carbide compositions Grades KM, KH, K2S, K3H and K4H.

[2] The findings are concerned in a special field of metallurgy.

4. Claim 4 reads:

"4. In a method of producing a hard metal composition, particularly for tool elements, the steps of

"(1) forming by heat treatment hard and refractory carbide crystal structures of carbon and at least two different elements other than carbon selected from the (third) fourth through sixth group of the periodic system (a) so that substantially carbide crystal structures are obtained homogeneously containing atoms of at least two different elements selected from said groups in addition to carbon atoms required to form carbide therewith, (b) said heat treatment extended for this purpose to a temperature of about 1600° to about 2000° C.,

"(2) comminuting and intimately admixing the carbide substance so obtained with considerably lower melting powdery auxiliary metal essentially of the iron group (a) in an amount of about 3 to about 22%,

"(3) and heat treating said mixture at a temperature elevated up to about 1400 to about 1600° C., (a) so that on cooling a substantially dense and tough body results."

5. Claims 5 and 6 are similar to claim 4.

6. Claim 7 reads:

"7. In a method of producing a hard metal composition, particularly for tool elements, substantially composed of hard and refractory carbide crystal structures of at least two different elements other than carbon selected from the (third) fourth through sixth group of the periodic system and always of titanium, and considerably lower melting auxiliary metal substantially of the iron group in amounts from about 3% to 22%, the steps of

"(1) preforming by heat treatment hard and refractory carbide crystal structures of titanium carbon and at least one other element, other than carbon, selected from said groups (a) so that substantially carbide crystal structures are obtained homogeneously containing atoms of titanium and said other selected element or elements in addition to carbon atoms required to form carbide therewith, (b) said heat treatment

extended for this purpose to a temperature of about 1600° to about 2000° C.,

"(2) comminuting and intimately admixing the carbide substances so obtained with powdery auxiliary metal substantially of the iron group (a) in an amount of about 3% to 22%,

"(3) shaping under pressure and

"(4) finally sintering by heat treatment said mixture at a temperature elevated up to about 1400° to 1600° C., (a) so that on cooling a substantially dense and tough body results."

7. Claim 8 reads:

"8. In the manufacture of hard metal compositions, particularly for tool elements, by finely comminuting and admixing hard and refractory carbide crystal structures with powdery auxiliary metal essentially of the iron group in an amount of about 3% to 22%, shaping under pressure and sintering the mixture by heat treatment at a temperature elevated up to about 1400° to 1600° C.: the step of

"(1) preforming, (a) before admixing with powdery auxiliary metal, (b) by heat treatment (c) hard and refractory carbide crystal structures of carbon, titanium, and at least one other element selected from the group consisting of tungsten, molybdenum, vanadium (and boron) (1) so that substantially carbide crystal structures are obtained homogeneously containing atoms of titanium and at least one element selected from said group in addition to carbon atoms required to form carbide therewith, (2) said heat treatment extended to a temperature of about 1600° to about 2000° C."

8. The claims of Re. 22,207 cover the method described in the specification of that patent, i. e., a solid solution of a pair of selected carbides is formed by heating an intimate mixture of the selected carbides to a temperature of from 1600° to 2000° C. The solid solution so obtained is then mixed with from 3 to 22% of auxiliary metal of the iron group, and the mixture pressed to shape and sintered at a temperature of from 1400° to 1600° C.

9. There is no general rule that hardness of mixed crystals or solid solutions of hard carbides exceeds that of the solvent

substance or element, and is a function of the proportion in which the elements are present in the mixed crystals. A solid solution of tungsten carbide in titanium carbide is not as hard as the solvent carbide (TiC).

10. When a mixture of tungsten carbide (WC) and molybdenum carbide (Mo2C) is heated to 2000° C. for two hours, a certain proportion of the tungsten carbide dissolves in the molybdenum carbide, the limit of solubility being about two parts by weight of molybdenum carbide to one part of tungsten carbide. The hardness of a composition, made by sintering such a previously heated mixture of carbides with 10% of cobalt, has no relation to the amount of solid solution contained in such mixture. In his patent, No. 1,959,879, Schwarzkopf, the inventor of the patents in suit, asserted that the hardest composition was that made from a previously heated mixture containing 30% molybdenum carbide (Mo2C) and 70% tungsten carbide (WC). Such a mixture, after heating to 2000° C. for two hours and cooling, would consist of 45% of a solid solution of tungsten carbide in molybdenum carbide and 55% of undissolved tungsten carbide. The tests made by plaintiff's expert, Redmond, showed that the compositions of maximum hardness were those made from mixtures of about 90% to 70% tungsten carbide and from 10% to 30% molybdenum carbide. The heated mixture of 90% tungsten carbide and 10% molybdenum carbide, after cooling, would consist of 15% solid solution of tungsten carbide in molybdenum carbide and 85% undissolved tungsten carbide. The sintering of the compositions including such mixtures alters the solubility and reduces the amount of solid solution present, the limit of solubility of tungsten carbide in molybdenum carbide, under such conditions, being about nine parts of molybdenum carbide to one of tungsten carbide. Schwarzkopf's alleged hardest composition, which he stated consisted of 63% tungsten carbide, 27% molybdenum carbide and 10% cobalt, would consist, therefore, of 30% solid solution of tungsten carbide in molybdenum carbide, 60% free or undissolved tungsten carbide and 10% cobalt. The hardest composi-

tions, made according to the method described in the Schwarzkopf patent, are those containing a large proportion of undissolved tungsten carbide and a small proportion of a solid solution of tungsten carbide in molybdenum carbide.

11. The method disclosed in Re. 22,207 consists in heating an intimate and uniform mixture of tungsten carbide (WC) and molybdenum carbide (Mo2C) at a temperature of from 1600° to 2000° C. for from one to two hours, then comminuting and mixing the material so obtained with from 3% to 22% of auxiliary metal taken from the iron group (iron, cobalt or nickel), pressing this mixture to shape and sintering at a temperature of from 1400° to 1600° C. for one or more hours.

The patent discloses that the method is also applicable to mixtures of titanium carbide and vanadium carbide, titanium carbide and boron carbide, titanium carbide and tungsten carbide, and titanium carbide and molybdenum carbide. The stated purpose of the preliminary heating of the mixture of carbides is to form a solid solution of one carbide in the other, which solid solution is to be comminuted and mixed with the required percentage of auxiliary metal, prior to pressing to shape and sintering.

### Re. 22,166

12. The claims of Re. 22,166 in suit, subject to defendant's motion to dismiss, are 1, 2, 3, 5, 6, 7, 8 and 9.

13. Claim 1: "1. A cemented hard metal composition sintered by heat treatment, consisting substantially of auxiliary metal essentially of the iron group in an amount of about 3% to 25% by weight, and a hard and refractory crystalline carbide substance of at least three elements selected from the (third) fourth through sixth group of the periodic system, a substantial amount of said carbide substance forming homogeneous carbide crystal structures each containing atoms of different selected elements from said groups in addition to carbon atoms."

14. Claim 2: "2. A cemented hard metal composition, for tool elements and other working appliances, consisting of hard and refractory carbides of at least

three different elements other than carbon selected from the (third,) fourth, fifth and sixth group of the periodic system and auxiliary metal substantially of the iron group in amounts of about 3% to about 25% by weight, substantial amounts of said carbides, about 10% by weight of the final body as a minimum, forming solid solutions."

15. Claim 3: "3. In a hard metal as being claimed in claim 1, the carbide substance present amounting from about 75% to 95% by weight of the 'final body and forming homogeneous carbide crystal structures amounting from about 35% up to 75% and 95%."

16. Claim 5: "5. A cemented hard metal composition sintered by heat treatment, for tool elements and other working appliances, consisting substantially of hard and refractory carbide substance of at least three different elements other than carbon selected from the (third) fourth through sixth group of the periodic system and auxiliary metal essentially of the iron group in amounts of about 3% to about 25% by weight, the minimum amount of carbide substance of a selected element to be about one percent, said carbide substance heat treated to form in substantial amount, about ten percent by weight of the final body as a minimum, homogeneous carbide crystal structures containing atoms of at least two different elements selected from said groups in addition to carbon atoms."

17. Claim 6: "6. A cemented hard metal composition sintered by heat treatment, for tool elements and other working appliances, consisting substantially of a hard and refractory carbide substance of at least three different elements other than carbon selected from the (third) fourth through sixth group of the periodic system and auxiliary metal essentially of the iron group in amounts of about 3% to 25% by weight, a minimum amount of carbide substance of a selected element to be about one percent, said carbide substance present in finely divided state and heat treated to form in substantial amount homogeneous carbide crystal structures containing atoms of at least two different elements selected

from said groups in addition to carbon atoms and thereby increasing the average hardness of the carbide substance contained in the composition."

18. Claim 7: "A cemented hard metal composition sintered by heat treatment, for tool elements and other working appliances, consisting substantially of a hard and refractory carbide crystal substance of at least three different elements selected from the group consisting of tungsten, molybdenum, titanium, vanadium,' tantalum and columbium, and auxiliary metal essentially of the iron group in amounts of about 3% to about 25%, the amount of carbide crystal substance of a selected element to be appreciable and about one percent as a minimum, and a substantial amount of said carbide crystal substance preformed by heat treatment to homogeneously contain atoms of at least two elements selected from said group in addition to carbon atoms."

19. Claim 8: "8. A cemented hard metal composition sintered by heat treatment, for tool elements and other working appliances, consisting substantially of a carbide substance and auxiliary metal substantially of the iron group in amounts of about 3% to about 25% by weight, said carbide substance consisting of at least three carbides selected from a group of carbides of the elements molybdenum, tungsten, titanium, tantalum, vanadium, columbium, the minimum amount of a selected carbide to be about one percent, said carbides heat treated to form in substantial amount homogeneous carbide crystal structures containing atoms of different elements from 'said groups in addition to carbon atoms and thereby increasing the average hardness of said carbide substance."

20. Claim 9: "9. A sintered hard metal composition for tool elements and other working appliances, substantially consisting of at least three different carbides selected from a group of carbides of the elements molybdenum, tungsten, titanium, tantalum, vanadium, columbium, and auxiliary metal essentially of the iron group in amounts of about 3% to about 25% by weight, the minimum amount of a selected.

carbide to be about one percent, and substantial amounts of said carbides forming homogeneous carbide crystal structures containing atoms of different elements from said group in addition to carbon atoms."

21. Schwarzkopf patent Re. 22,166 discloses a method of making a cemented hard metal composition by heating an intimate mixture of one pair of carbides to a temperature of from 1600° to 2000° C. for from one to two hours to form a first two-carbide solid solution, heating a second pair of carbides to 1600° to 2000° C. for one to four hours to form a second two-carbide solid solution, heating an intimate mixture of the two solid solutions thus formed to a temperature of 1600° to 2000° C. for from one to four hours to form a three-carbide solid solution, mixing the three-carbide solid solution thus obtained with auxiliary metal, in amounts from 3% to 25%, pressing to shape and sintering at a temperature of 1400° to 1600° C. for from one to four hours. The patent contains no disclosure of the characteristics of the product, by which it can be identified, apart from the description of the method of making the product.

22. Claims, 1, 2, 3, 5, 6, 7, 8 and 9 of Re. 22,166 purport to cover a sintered or cemented hard metal composition consisting of from 3% to 25% of auxiliary metal, of the iron group, and the carbide ingredients, which must include at least three carbides of different metals of the groups specified, a substantial amount of the carbide ingredients being a solid solution including at least two different carbides. Claim 3 requires that the carbide solid solution ingredient of the composition must amount to at least 35%, while claim 2 requires that it must amount to at least 10%. Certain of these claims require that the solid solution shall be formed by heat-treatment of carbides, but do not specify that this heat-treatment must be effected prior to the addition of the auxiliary metal.

## Re. 22,074

23. Claims 1 to 5 and 8 are in suit. They are method claims. The method is found in the specification and reads:

"The invention includes the steps of comminuting, preferably as finely as possible, at least two hard carbides selected from carbides of different elements of the third through sixth groups of the periodic system, admixing the selected carbides in substantial amounts, including a minimum of 1% of a selected carbide, with auxiliary metal essentially of the iron group in amounts of about 3% to 22%, shaping and preferably pressing the mixture and finally alloying it by sintering it into a hard and tough body and until in substantial amount solid solutions or homogeneous carbide crystal structures are formed therein, each of which contains atoms of two (or more) selected elements capable of forming such structures, in addition to atoms of carbon required to form carbide with those elements."

24. The claims under this patent read:

"1. In a method of producing a hard metal alloy, in particular for tool elements and other working appliances, the steps of comminuting as finely as possible at least two hard carbides of different elements other than carbon selected from the (third) fourth through sixth group of the periodic system, admixing said comminuted carbide in substantial amounts, including a minimum of 1% of a selected carbide, with auxiliary metal essentially of the iron group in amounts of about 3% to 22%, shaping said mixture and finally alloying it by sintering into a hard and tough body and until solid solutions of said selected carbides are formed therein in substantial amount.

"2. In a method of producing a hard metal composition, in particular for tool elements and other working appliances, the steps of finely comminuting at least two hard carbides of different elements other than carbon selected from the (third) fourth through sixth group of the periodic system, admixing said comminuted carbides in substantial amounts, including a minimum of 1% of a selected carbide, with auxiliary metal essentially of the iron group in amounts of about 3% to 22%, shaping and pressing said mixture and finally alloying it by sintering into a hard and solid body and until solid solutions of said selected carbides are formed therein in substantial amount, about 10% by weight of the final body as minimum.

"3. In a method of producing a hard metal alloy, in particular for tool elements and other working appliances, the steps of comminuting as finely as possible at least two hard carbides of different elements other than carbon selected from the (third), fourth, fifth and sixth group of the periodic system, admixing said comminuted carbides in substantial amounts, including a minimum of 1% of a selected carbide, with auxiliary metal essentially of the iron group in amounts of about 3% to 22%, shaping said mixture under pressure and finally alloying it by sintering into a hard and tough body and until solid solutions of said selected carbides are formed in substantial amount and increase thereby the average hardness of the alloy.

"4. In a method of producing a hard metal composition, particularly for tool elements and other working appliances, the steps of selecting and finely comminuting at least two hard carbide crystal structures formed from carbon and different elements other than carbon belonging to at least two different groups of the periodic system and selected from the (third) fourth through sixth group thereof, admixing the comminuted carbide structures in substantial amounts, including a minimum of about 1% of a selected carbide structure, with auxiliary metal essentially of the iron group in amounts of about 3% to 22%, shaping said mixture under pressure and finally compounding it by sintering at temperatures between about 1400° and about 1600° C. until a hard and tough body and substantial amounts, about 10% by weight of the final body as a minimum, of homogeneous carbide crystal structures are obtained therein containing atoms of at least two elements selected from said groups in addition to carbon atoms.

"5. In a method of producing a hard metal composition, particularly for tool elements and other working appliances, the steps of selecting and comminuting as finely as possible at least two carbide crystal structures formed from carbon and different elements selected from the group consisting of (boron,) titanium, vanadium, columbium, tantalum, tungsten, molybdenum, admixing the comminuted carbide structures in substantial amounts, including a minimum of about 1% of a selected carbide structure, with auxiliary metal essentially of the iron group in amounts of about 3% to 22%, shaping said mixture and finally compounding it by sintering at temperatures between about 1400° and about 1600° C. until a hard and tough body and substantial amounts of homogeneous carbide crystal structures are obtained therein containing atoms of at least two elements selected from said group in addition to carbon atoms, and the average hardness of the composition is increased thereby.

"8. In a method of producing a hard metal alloy, for tools and other working appliances, the steps of intimately and uniformly admixing at least two different hard carbide crystal structures formed from carbon and at least two elements selected from the group consisting of (boron,) titanium, vanadium, tantalum, columbium, tungsten and molybdenum, with auxiliary metal essentially of the iron group, so that a finely divided mixture substantially comprised of said carbide crystal structures and about 3% to 22% of said auxiliary metal is obtained, shaping under pressure and finally sintering said mixture at about 1400° C. to about 1600° C. until a hard and tough body and substantial amounts, about 10% of weight of the final body as a minimum, of carbide crystal structures homogeneously containing atoms of at least two elements selected from said group in addition to carbon atoms, are obtained during final sintering."

25. Schwarzkopf patent, Re. 22,074, in suit, discloses a method of producing a sintered hard metal composition consisting of the steps of finely comminuting and mixing at least two different selected carbides and from 3% to 22% of auxiliary metal of the iron group, pressing the mixture to shape and, then, sintering it at a temperature of from 1400° to 1600° C. for one or several hours or a major part of one hour. It is asserted that solid solutions of carbides are formed in the final sintering step.

26. Claims 1 to 5, inclusive, and 8, Re. 22,074, purport to cover a method of producing a sintered hard metal composition, in which two different selected carbides are mixed with from 3% to 22% of auxiliary metal of the iron group, the mixture

is then pressed to shape and, finally, the mixture is sintered by heating at temperatures between 1400° and 1600° C. A solid solution of carbides is obtained in the final sintering step.

Re. 22,207

Re. 22,166 and

Re. 22,074

27. Infringement is charged of claims 1 to 8 of Re. 22,207 and 1 to 5 and 8 of Re. 22,074 by the methods used by plaintiff in manufacturing its steel-cutting compositions Grades KM, KH, K2S, K3H and K4H. Plaintiff is also charged with infringement of the product claims 1, 2, 3, 5, 6, 7, 8 and 9 of Re. 22,166.

28. Plaintiff described its methods in its complaint, in answers to interrogatories and by witnesses at trial. All this supports a finding that the steel-cutting compositions, Grades KM, KH, K2S, K3H and K4H, manufactured by plaintiff and its predecessor from July 1, 1940, to date, consist of a mixture of the ingredients, tungsten-titanium carbide (WTiC2), tungsten carbide or carburized tungsten (WC), a solid solution of tantalum carbide and titanium carbide in columbium carbide (Cb(TaTi)C) and a solid solution of columbium carbide and titanium carbide in tantalum carbide (Ta(CbTi)C). This mixture of ingredients is sintered with from 6.5% to 11.5% of cobalt (Co). The method used by plaintiff and its predecessors from July 1, 1940, to date, for producing the ingredient tungsten-titanium carbide (WTiC2) consists in charging a graphite crucible with tungsten scrap, titanium dioxide (TiO2), carbon and electrolytic nickel slugs, in proper proportions, heating the graphite crucible containing the charge in an electrical induction furnace to a temperature of 2800° C. and higher, which temperature is reached in a heating period of from four to five hours, then allowing the crucible and contents to cool, breaking up the crucible, removing the solidified mass therefrom, breaking up the mass by mechanical means to a size that all particles will pass through a 10-mesh screen, ball milling such particles under water until all particles pass a 60-mesh screen, subjecting such particles to leaching with hydrochloric acid and

nitric acid with alternate washing with water and decantation to separate the lighter material, then washing the particles with hydrofluoric acid followed by washing with water and decantation, then washing the residue with soda ash solution or caustic soda solution to neutralize any remaining acid and, finally, washing the residue with water and drying it, such residue being the ingredient referred to as WTiC2. The materials are not charged into the crucible in intimate mixture but are charged therein in layers.

The procedure used by plaintiff and its predecessor from July 1, 1940, to the present time for producing tungsten carbide or carburized tungsten (WC), used in the making of its compositions, is to mix tungsten metal powder and carbon in proper proportions and place the mixture in a graphite crucible, which is heated in an electrical induction furnace to a temperature of 1425° C. in a heating period of from one and one-half to two hours, the maximum temperature not being maintained for any considerable period unless it is necessary to complete carburization of the tungsten. The crucible and contents are then cooled to room temperature, the contents removed from the crucible and, if lumpy, reduced to powder of the desired fineness by mechanical means.

The procedure used by plaintiff and its predecessor from July 1, 1940, to the present time, for preparing the materials referred to above as Cb(TaTi)C and Ta(CbTi)C is to charge a graphite crucible with columbite ore or tantalite ore, titanium dioxide, carbon and aluminum in proper proportions, the titanium dioxide being mixed with the carbon, heating said crucible and contents in an electrical induction furnace to a temperature of 2200° C. and higher, reached in a heating period of from four to five hours, then cooling the crucible and contents to room temperature, breaking up the crucible, removing the solidified mass therefrom and breaking up that mass by mechanical means to a size that all particles will pass through a 10-mesh screen. These particles are then ball milled under water until all the particles pass a 60-mesh screen. The particles from the ball milling step are then subjected to leaching

144

with hydrochloric acid and nitric acid, with alternate washing with water and decantation to separate the lighter material. The particles are then washed with hydrofluoric acid, followed by washing with water and decantation, after which the residue is washed with soda ash solution or caustic soda solution to neutralize any remaining acids, and then the residue, which is Cb(TaTi)C or Ta(CbTi)C, depending upon whether columbite ore or tantalite ore is used, is washed with water and dried.

The procedure used by plaintiff and its predecessor from July 1, 1940, to the present time for the manufacture of Grades KM, KH, K3H, K2S and K4H, from the ingredients referred to above, is as follows: The ingredients are mixed with powdered cobalt (Co) in the proportions desired, by grinding in a ball mill. The mixed and ground powders are then pressed to form a compact of the desired size and form, which is sintered by heating in a non-oxidizing atmosphere to a temperature varying from 1315° C. to 1538° C., depending upon the form and size of the compact, the maximum temperature being maintained for a period varying from fifteen minutes to one hour.

### Non-Infringement
### Re. 22,207

29. The procedure used by plaintiff for making its steel-cutting compostitions, Grades KM, KH, K2S, K3H and K4H, does not include any steps that are the equivalent of the steps described and claimed in Schwarzkopf patent, Re. 22,207, for forming a solid solution of carbides that is to be mixed with auxiliary and sintered.

■ 30. The procedure used by plaintiff for making its steel-cutting carbide compositions, Grades KM, KH, K2S, K3H and K4H, is not the method described in and patented by Schwarzkopf patent, Re.

22,207, and does not infringe any claims of that patent.

### Non-Infringement
### Re. 22,166

■ 31. The claims in suit under this patent are product claims. The patent also describes and claims a method of making the product. Defendant has admitted plaintiff does not infringe the method claims. Defendant's specifications do not describe the product so it can be recognized apart from the description of the process for making it. It would seem defendant's admission that plaintiff's products are not made according to the method described in defendant's patent is likewise an admission that plaintiff in its manufacturing does not infringe the patent's product claims.

### The Question of Validity

■ It was said in Sinclair & Carroll Co., Inc., v. Interchemical Corporation, 325 U.S. 327, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644, that while some of the lower federal courts in infringement suits dispose of them on the ground of non-infringement it "will usually be the better practice by inquiring fully into the validity of [the] patent." This view has been recognized in this Circuit [3] as well as by this court.[4] But this does not mean that in every case the court is compelled to go into the question of validity. It has been so recognized by two judges of high authority.[5]

So far I have deemed it sufficient to dispose of the controversy between the parties by holding plaintiff does not infringe '207 and '166 and with that holding plaintiff will receive adequate relief. But as to '074 admittedly defendant's claims read on plaintiff's method; plaintiff admits infringement but challenges validity. In fact, this is the only issue under this patent; and this is my apologia for disposing of one patent on validity and the other two on non-infringement.

[3] Cridlebaugh v. Rudolph, 3 Cir., 131 F. 2d 795.

[4] Booth Fisheries Corporation v. General Foods Corporation, D.C.Del., 48 F. Supp. 313; White v. Bruce, D.C.Del., 62 F.Supp. 577; Phillips Petroleum Co. v. Shell Development Co., D.C.Del., 6 F.R. D. 406.

[5] Judge Parker in Anthony v. Sherman, 4 Cir., 159 F.2d 995, and Judge Wyzanski in Vulcan Corp. v. International Shoe Machine Corp., D.C.Mass., 68 F. Supp. 990.

### Re. 22,074

32. Schwarzkopf Re. 22,074 is asserted to be based on an application that was a continuation-in-part of his co-pending application Serial No. 743,717 filed September 12, 1934 upon which the patent issued on June 28, 1938 as No. 2,122,157.

33. The specifications describe a method in which mixed crystals or solid solutions of carbides are formed prior to the addition of auxiliary metal and the sintering. It does not disclose a method in which the solid solution of carbides is formed in the final sintering step.

■ 34. Claims 1, 2, 3, 4, 5 and 8 of Re. 22,074 are directed at an alleged invention that was not disclosed in the application for original patent, No. 2,170,433, when that application was filed on September 16, 1937. That original application disclosed a method in which the mixed crystals of carbides were to be formed by heating, before the auxiliary metal was added. The application was amended, shortly before the patent issued, to disclose precisely the opposite, that is to say, that the mixed crystals of carbides were to be formed, after the addition of auxiliary metal and during the final sintering step. Claims 1, 2, 3, 4, 5 and 8 of Re. 22,074 are invalid and void because of new matter.

■ 35. Moreover, claims 1, 3, 4, 5 and 8 are invalid. Claims 1 and 3 of Re. 22,074 are not for the same invention as the claims of the original patent, 2,170,433, because these claims do not require that the hard carbides be mixed in suitable proportions to form hardest mixed crystals, as specified in original claims 1, 2 and 6, and do not require that a minimum of 10% of mixed crystals shall be formed in the final sintering step, as specified in original claims 3, 4, 5 and 7. Claim 4 of Re. 22,074 is not for the same invention as any of the claims of the original patent, because that claim requires that the hard carbide shall be carbides of elements of different groups of the periodic system, a feature not brought out in any of the claims of the original patent. Claim 8 of Re. 22,074 is not for the same invention as the claims of the original patent, because it requires that the carbides shall be selected from a narrower group than that specified in the original claims, that is to say, from carbides of the elements boron, titanium, vanadium, columbium, tantalum, tungsten and molybdenum. Claims 1, 3, 4, 5 and 8 of Re. 22,074 are not for the same invention as the claims of the original patent, No. 2,170,433 and such claims are invalid and void for that reason.

■ 36. Claims 1 to 5, inclusive, and 8, of Re. 22,074, are broader than the inventions of said patents, because so broadly phrased as to comprehend within their scope chemical substances that would not be useful in the methods covered by said patents, and, therefore, such claims are invalid and void.

In view of the holding as announced, it becomes unnecessary to rule on defendant's motion to dismiss certain portions of the complaint. There remains a statement for the Conclusions of Law and they are:

■■ 1. Infringement may not be established by a mere showing that the words of the claim are literally readable upon the accused processs, but it must appear, also, that the accused process consists of steps that are equivalents of the steps of the patented method, in that they accomplish substantially the same effect in substantially the same way. Steps that were not known, at the date of the patent, as substitutes for steps described therein, cannot be considered equivalents thereof.

■ 2. The product claims of a patent, which also describes and claims a process of making the product, and which does not describe the characteristics of the product so that it can be recognized, apart from the process of making it, are not infringed by a product made by a process other than the one described and claimed in the same patent.

■ 3. Claims of an original patent directed at an alleged invention, not disclosed in the application for that patent, when filed, but based on a disclosure inserted therein by amendment subsequent to filing, are invalid and void, and claims to the same invention, contained in a reissue of that patent, are also invalid and void.

4. Claims of a patent expressed in such broad terms as to include many chemical substances, some of which would carry out the rule of the patent, but many of which could not be thus employed, are broader than the invention and, therefore, invalid and void.

Plaintiff is entitled to a decree finding and adjudging that it and its predecessor have not infringed claims 1 to 8 of Re. 22,207 or claims 1, 2, 3, 5, 6, 7, 8 and 9 of Re. 22,166 by the manufacturing, use or sale of plaintiff's steel-cutting compositions Grades KM, KH, K2S, K3H and K4H and finding and adjudging that claims 1, 2, 3, 4, 5 and 8 of Re. 22,074 are invalid and void. Defendant's counterclaim should be dismissed with costs but exercising discretion there will be no award of attorneys' fees.