JOHNSON AND JOHNSON, a corporation, James J. Purcell, Frank C. Beacham, and Lititz Knitting Company, a corporation, Plaintiffs,

v.

CAROLINA LEE KNITTING CO., Inc., a corporation, Defendant.

Civ. No. 982–G.

United States District Court
M. D. North Carolina,
Greensboro Division.

Oct. 4, 1957.

Long, Ridge, Harris & Walker, Graham, N. C., Olson, Mecklenburger, von Holst, Pendleton & Neuman, Chicago, Ill., for plaintiff.

Armistead Sapp, Greensboro, N. C., Paul & Paul, Philadelphia, Pa., for defendant.

HAYES, District Judge.

This is a suit to restrain defendants from infringing Patent 2,702,998 to James J. Purcell and for an accounting. Defendants plead invalidity and noninfringement.

Application for the Purcell patent was filed Oct. 28, 1954 and patent issued March 1, 1955, for a surgical stocking.

The inventor recognized the state of the art by stating that "All surgical stockings * * *. were formed by using rubber yarn throughout the entire stocking or by interspersing courses made of rubber with courses of non-elastic yarn. * * * Such stockings * * * were either too confining or not confining enough * * * if a stocking is made wholly of rubber yarn it is bound in most cases to be too loose or too tight. Nor does a mixture of rubber with non-elastic yarn fare any better because the non-elastic yarn sets a limit on the extent to which the rubber yarn can stretch" and suffer from the same handicaps as those made wholly of rubber yarn.

The invention overcomes these difficulties "by knitting a fabric of some of the courses of rubber yarn and by interspersing said courses with other courses knit of an elastic textile but non-rubber yarn." Then he specifies how his product is made. "I use a yarn which is crinkled throughout its length and I knit this yarn under no tension so that the length of yarn used in each course will, if stretched out straight, be far in excess of the length of the course. By this arrangement, the courses knit of this type of yarn can stretch with the stretching of the courses knit of the rubber yarn, and they will return to their initially contracted crinkled condition with the contraction of the courses formed of rubber yarn without materially increasing the overall confining effect of the stocking. The net effect is to reduce the weight of the stocking", and "improve the feel and appearance * * * without limiting the capacity of the rubber yarn to stretch."

Reference is made to Fig. 2 showing the leg of the stocking is formed of courses of rubber yarn 12 and courses of crinkled yarn 10 alternating "so that, as the yarn stretches, the crinkled yarn stretches with it. The yarn 10 is crinkled and set in the crinkled condition so that, in the absence of tension it will contract." "The method of forming the stocking as above described produces a comfortable, properly confining stocking * * * not objectionable as to appearance, weight or feel." Then follows an extended description of crinkled yarn and prefers the use of Helenca. Reference is then made to a method described in U. S. Patent # 2,641,914 to Neumager dated June 16, 1953.

There are 10 claims. 7, 8 and 10 refer to the use of a yarn which is either polyamide, a polyester or super-polyamide and relate to an elastic yarn not specifically covered by the term "synthetic yarn" used in the other 7 claims. Claim 1[1] is typical of the others and is basic to the others. The expression, "said yarn being knit in its relaxed condition," is repeated in 7 of the claims and by implication in the other three claims.

Neumager, in the patent above, thought he was accomplishing the long sought result of a surgical stocking neat in appearance and feel by the use of crinkled yarn alone. Hinchliff, in U. S. Patent 2,169,203, dated August 8, 1939, produced a stocking by using more than one elastic yarn in the knitting of the leg, the yarns being alternated so as to camouflage any showing of off-size or irregular. portions in the yarn, thereby over-coming the ugliness often occurring where each course was knitted from one elastic yarn. A portion of claim 1[2] is

1. "1. A knit fabric formed of alternating courses of rubber yarn and courses of a thermoplastic synthetic yarn which is crinkled and set prior to being knit, said synthetic yarn being knit in its relaxed condition."

2. "1. A stocking composed throughout, a substantial portion thereof of an elastic yarn of such fineness as to be capable of being knitted in a knitting machine and having a core of elastic material and a covering of relatively inelastic fibrous material * * * said portion being formed by the aforesaid elastic yarn and another elastic yarn alike to the first yarn, each yarn being knit for a single course and repeated in regular order * * *."

quoted in the foot note to illustrate his idea of alternating the courses in his stocking.

It will be observed that Purcell's invention involves a stocking produced by using a course of elastic yarn alternated with a course of crinkled yarn (helenca), said synthetic yarn being knit in its relaxed condition. He defines what he means by crinkled yarn being knit in its relaxed condition. "I knit this yarn under no tension so that the length of the (helenca) yarn used in each course will, if stretched out straight, be far in excess of the length of the course." This arrangement enables the helenca to stretch with the elastic yarn without limiting its stretchability and to relax with it. The patent office allowed Purcell's patent over the references to Hinchliff and Neumager and this court finds the Purcell patent is valid when confined to its specifications over the prior art Hinchliff and Neumager. He discovered a way to over-come the handicap of using an inelastic yarn with the elastic yarn which limited the stretchability of the elastic yarn, by using helenca (crinkled synthetic yarn) which he knitted with no tension so that the synthetic yarn would stretch with the elastic yarn and return to its crinkled shape after being released. But it is not a pioneer patent. Long Mfg. Corp., Inc., v. Holliday, 4 Cir., 1957, 246 F.2d 95.

Confining the Purcell patent to the scope of its specific definitions, and resorting to the specifications to explain the meaning of the term "said synthetic yarn being knit in its relaxed condition", stated in the claim (General Electric Co. v. Wabash Co., 304 U.S. 364, 365, 373, 58 S.Ct. 899, 82 L.Ed. 1402), the accused stocking made by the defendants does not infringe. The accused stocking is quite different from the plaintiff's patented product. It differs in appearance, feel and function, and to such an extent that the one would not ordinarily be accepted for the other by a purchaser. It is different in the manner of its manufacture. The accused stocking is made of a course of elastic yarn alternated with a course of helenca and nylon (an inelastic yarn) knit under tension. Its stretchability is restricted because the helenca and nylon do limit the elastic yarn in its stretch and when relaxed, the helenca never returns to its original crinkled condition. Demco, Inc., v. Doughnut Mach. Corp., 4 Cir., 62 F.2d 23, 25; Jogger Mfg. Corp. v. Roquemore, 7 Cir., 118 F.2d 867.

Perhaps something should be said about the term of "knitting said yarn under no tension". Those skilled in the knitting art easily understand tension. The use of any device or obstruction which hampers or retards the free flow of yarn when it leaves the spool and before it is fed to the needles produces tension on the yarn and reduces its diameter and stretches it. The fineness or coarseness of the yarn as it enters the needles affects the knitted product. It is customary for the yarn in its journey from the spool to the needles to encounter numerous retarding means and generally tension devices so that the yarn will reach the needles in a smooth, even thread of the desired fineness. The term knitted under "no tension naturally means with the least tension possible in order for the needles to knit it. The teachings of the Purcell patent make it plain to one skilled in the art that the helenca yarn is to be knitted with no tension (as freely as possible) in order that when knitted the helenca will return to its crinkled condition like it enjoyed before being knitted and in order that the product made therefrom will be relaxed when it is not stretched. The patent contemplates the necessity of knitting it with no tension in order to get a fabric where the helenca relaxes after being stretched like the elastic yarn. Purcell is striving with the helenca yarn by its being knit with no tension to equal, as nearly as possible, the elasticity of the elastic yarn. In this manner he explains why the use of inelastic yarn cannot be used. He rejects the use of inelastic yarn which he says has been unsatisfactory because it limits the elastic yarn in its stretch. In fur-

ther clarification of the terms here involved, helenca is the name for nylon yarn which has been twisted, crinkled and set in that crinkled condition. As it is taken from the spool, it immediately crinkles up, becoming much looser and a larger strand than it assumed when it was untreated nylon. When this crinkled helenca is stretched it assumes its original nylon size, shape and appearance, but upon being released from pressure, it recoils to its crinkled status. Therefore, it has more stretchability than nylon and correspondingly more capacity to contract. Elastic yarn is not as soft or neat in appearance or in feel as is nylon. The more nylon you have in the stocking the neater it looks and feels. However, it is necessary to have elastic yarn in a surgical stocking.

The plaintiffs contend that the nylon yarn in the accused stocking serves no useful purpose and is placed there for the deliberate purpose of trying to avoid infringement. We are unable to agree with this view. As stated above, the accused stocking radically differs from the teachings of the Purcell patent both in the product itself, and in the way it is made. Since the accused stocking is knitted with tension on the strand of helenca, thereby removing some of its stretch, and is knitted with a strand of nylon (an inelastic yarn), it is manifest that the course of helenca and nylon restrict the stretch of the elastic yarn. This restriction of the stretch of elastic yarn was avoided by Purcell which was novel and useful.

The accused stocking is not produced by following the teachings of the Purcell patent but in direct conflict with its teachings by using an inelastic yarn and by knitting the helenca under tension. The omission in the accused stocking of the two elements above which are indispensable in Purcell's patent avoids infringement. Montgomery Ward Co. v. Rogers, 4 Cir., 100 F.2d 721; Anthony v. Sherman, 4 Cir., 159 F.2d 995; Kay Patents Corp. v. Martin Supply Co., 4 Cir., 202 F.2d 47.

Judgment for defendant.