**LEE DYEING COMPANY OF NORTH CAROLINA, Inc., Plaintiff,**

v.

**WEBCO DYERS, INC., Defendant.**

Civ. A. C–79–G–58.

United States District Court
M. D. North Carolina,
Greensboro Division.

Jan. 19, 1960.

McLendon, Brim, Holderness & Brooks, Thornton H. Brooks, Greensboro, N. C., Kirschstein, Kirschstein & Ottinger, Morris Kirschstein, David Kirschstein, New York City, for plaintiff.

Cooper, Lathan & Cooper, Thomas D. Cooper, Burlington, N. C., Eaton, Bell, Hunt & Seltzer, Paul B. Bell, Donald M. Seltzer, Charles B. Park, Charlotte, N. C., for defendant.

HAYES, District Judge.

On January 19, 1951, Karl E. Pannaci applied for a Patent on a method and apparatus for continuous heat setting of knitted fabrics formed of Thermoplastic material, and secured thereon Patent 2,-591,861, dated April 8, 1952. His discovery was made in June, 1950.

He contemplated the use, in connection with his patent of the well known and widely used tenter frame. His invention does not cover the tenter frame, the heating equipment, tenter chains, variable speed drive or take-off rolls. They were old.

In his operations before his invention, he found the product (almost entirely nylon), while being heat set, became distorted by shrinking in the central part which left the edges (selvages) longer than the central portion. When folded for cutting, the edges rippled and caused serious trouble for the cutter. The lay-up problem reduced the garments to be cut therefrom.

He saw that this condition arose because the tenter hooks and chains of the tenter frame held the edges of the fabric

in a fixed position, while the area between the boarders was loose and contracted, while being heat set, thus causing a lagging in the central area.

Pannaci successfully solved his problem by the methods and apparatus described in the patent, towit, by pulling that portion of the fabric not held in a fixed position with the tenter hooks, in the same direction as the tenter chains carried it, and he accomplished this result by an apparatus which consisted of a pair of rolls about 26″ in length,—the upper roll floating on the lower roll,—and the lower roll being mechanically driven at a variable speed, through which the fabric passed, the pinch of the rolls exerting a pull on the fabric in its central area.

The fabric being heat set was 88″ or 108″ wide. Thus forcing the fabric between the pair of short rolls, as the fabric left the heat chamber and before it reached the take-off rolls, enabled the operator to apply whatever pressure he desired in order to pull the fabric in its central area and to avoid the tendency of its lagging in the center.

In Column 3, lines 24 to 31, he describes the problem his invention solved: "Since the fabric is being progressed by the engagement of its longitudinally-extending, marginal edges with the tenter chains and there is no direct application of a progressing force to the portions of the fabric between the chains, these portions lag somewhat behind the edge portions, and the courses instead of remaining straight, become curved."

The problem is further explained in Column 3, lines 34 to 46.

"However, since the marginal portions of the fabric are held in substantially fixed relative relation by means of the tenter chains, these portions of the fabric can not shrink longitudinally, but the portions between the chains shrink very rapidly so that the transversely-extending courses do not maintain the same positions and relative relation they had prior to entering the heating chamber but tend to shrink in a direction opposite the direction of movement, and the strip of fabric thus becomes shorter in the center than at the edges."

Pannaci's method and apparatus are directed toward overcoming this difficulty by exerting a pull on the central portion of the fabric while in the heating chamber and as it passes from the heat-setting chamber toward the take-off rolls "in substantially the same relative relation that they (the courses) occupied before they entered the heating chamber."

He describes the function of his apparatus. It is to maintain the fabric in the heating chamber in substantially the same relative relation that the courses occupied before they entered the heating chamber. * * * This is accomplished by adjusting the peripheral speed of the rolls so that they pull the central portions of the fabric forward at a rate somewhat faster than the rate the marginal portions of the fabric are moving.

Claims 1, 2, 3, 4, 5, and 9 end with the phrase "maintaining said courses in substantially the same relative relation as existed before entering said heated zone." Claims 6, 7, 8, and 9 relate to the apparatus—The pair of short rolls of which the lower has a variable speed drive—which is to pull the fabric in its central area to keep it in proper relation to the edges of the fabric securely held by the tenter hooks, the pull being produced by the pinch of the pair of rolls through which the fabric passes. Claim 1[1] is typical of the method Claims and Claim 9 is typical of the apparatus.[2]

1. "The method of continuously setting an elongated knitted fabric formed of a thermo plastic material, such as nylon, and having transversely-extending courses therein, which comprises securing the longitudinally-extending, marginal edges of said fabric in relatively fixed, parallel-disposed relation at closely spaced points thereof with the ends of each course substantially directly opposite each other; continuously moving said fabric in a longitudinal direction; heating said mov-

2. See Note 2 on Page 228.

It was known in the Art that by pulling a fabric by its edges tended to distort the transverse courses by causing the central portion to lag behind. It was well known in the Art that this could be overcome, in a measure, by the use of an over-feed device feeding the fabric into the tenter at a greater speed than that of its edges on the tenter hooks.

The defendant feeds the fabric into the tenter in this manner which largely compensates for the shrinkage in the central area. If the fabric in defendant's operation came out of the heat-setting area, in "substantially the same relative position as before entering said zone," it would be distorted when finished, the very thing plaintiff was trying to avoid.

The defendant does not use the apparatus described in the patent, nor a substitute nor an equivalent of it.

The defendant uses no apparatus whatever between the fabric's exit from the heating chamber and the take-off rolls. The use of such an apparatus is inherent to the practice taught by the patent.

Plaintiff's patent in nowise concerns take-off rolls. They were in general use on tenter frames for years before plaintiff's invention. It was well known in the Art that take-off rolls could be, and had been, used in various ways to pull, to straighten and to take off the fabric in the shape the producer desired.

Take-off rolls were 12 feet, or more in length and were never shorter than the distance between the tenter chains. Usually they were about 5″ in diameter.

The tenter machine used by defendant was of 1910 vintage and equipped with aluminum take-off rolls, 12 feet long and about 5 inches in diameter. Later it discarded these and substituted rolls of the same size but made of steel. The bottom roll was power driven, its ends anchored in a housing and the top roll "floated" on the bottom roll. The length of the roll caused some sagging in the center and wrapping the rolls with fabric was designed to exert a more uniform pulling throughout its entire width. It did not exert a pull only in the zones intermediate said marginal edges.

A careful reading of the entire patent discloses that the fabric Pannaci describes enters the heat-setting chamber of the tenter with its courses substantially the same at its edges and in its transverse courses; that after entering the heat-setting chamber, the fabric, due to the heat-setting, shrinks back in the area between the edges, because the edges are held stationary by the tenter chains and hooks, and the area in between these securely held edges is not held, and, unless held, will lag in the opposite direction from the movement of the fabric; to over-come this lagging tendency the apparatus to accomplish it is by mounting a pair of rolls between the tenter chains with the pinch thereof disposed to engage the fabric having its marginal edge secured to said chains after said fabric has passed out of the heat compartment, and in the central disposed zones of said fabric, and a means for variable speed to drive the bottom roll.

---

ing fabric to a temperature at least equal to its stablizing point as it passes through a zone of limited extent longitudinally of said fabric; and maintaining said transversely-extending courses, while moving through the zone of heating, in approximately the same relative position as before entering said zone, by applying tension in the direction of movement of said fabric in zones thereof intermediate said marginal edges."

2. "The method of continuously setting an elongated, knitted fabric formed of a thermo-plastic material, such as nylon, and having transversely-extending courses therein, which comprises continuously moving said fabric longitundinally thereof through a heated zone having a temperature adapted to heat said fabric to a stablizing point; preventing shrinkage of the longitudinally-extending marginal edges of said fabric during the heating thereof by holding said portions in substantially fixed relative relation; and moving those portions of said fabric between said marginal edges, while in said heating zone, at a rate which will maintain said courses in substantially the same relative relation as existed before entering said heating zone."

His solution called for methods and apparatus acting on the fabric only in the area between its edges, and before it reached the final exit from the tenter at the take-off rolls.

It is significant that he emphasizes the place where the solution of the problem lies, but at no time mentions take-off rolls. The drawing in Figure 1 shows clearly that the control of the central area of the fabric is to be accomplished by a pair of short rolls (in between the tenter chains) interposed between the heat chamber and the take-off rolls.

■ In this instance he seeks to enlarge his claims by the elimination of his apparatus and extend them to the take-off rolls. His patent does not fence out the use of take-off rolls nor the various uses therefor in practice nor such changes as a man skilled in the Art might make, from time to time, to improve the product. At most the patent in suit is an improvement but not a pioneer in the field. It is not entitled to a liberal construction. Wheeling Stamping Co. v. Standard Cap etc. 4 Cir., 155 F.2d 6.

The accused method and apparatus do not read on the patent in suit. Defendant does not use the short pair of rolls between the conventional take-off rolls and the exit of the fabric from the heat-setting chamber. This is an implicit requirement of the patent. Defendant used no substitute or equivalent apparatus. Defendant uses the conventional take-off rolls and with them brings the fabric under the bottom roll and up over it and between it and the top roll and up over the top roll, thus forcing the fabric to take an S course after it comes off the tenter frame. The edges are cut as the fabric starts under the lower roll. It is true that defendant covers the take-off roll with appropriate material which tends to pull the fabric all the way across its entire width. This is contrary to the teaching of the patent. It does use the mechanically driven mechanism to rotate the lower take-off roll at a faster or different speed from that of the tenter chains, but these steps were not new and are not covered by the patent.

If the patent is construed to cover these methods and this apparatus it would be void for want of invention.

The defendant does not take the fabric from the heat-setting chamber with its knit loops in the same relative position with its edges as it was when it entered the chamber. Defendant over-feeds the central area of the fabric into the chamber which over-comes, in part, the shrinkage while being heat-set. This is contrary to the teaching of the patent in suit.

■ The omission of any one of the steps in a process or method patent set forth in the Claim as constituting the process or method defeats the infringement. Shermer v. Anthony, 4 Cir., 159 F.2d 995; Sears, Roebuck & Co. v. Minnesota M. & M. Co., 4 Cir., 249 F.2d 66.

■ Assuming that Pannaci invented an improvement worthy of a patent in spite of McElrath v. Industrial Rayon Corporation, 4 Cir., 123 F.2d 627, 629, it was by no means a pioneer. He assigned his patent to plaintiff and only it and its subsidiaries have used it. It produces satisfactory results for plaintiff and its customers and appears to be a better method than that employed by the defendant. The scope of the patent must be confined to its specifications; it can not be extended and broadened to embody take-off rolls and their use as employed by defendant.

Plaintiff contends that the Art practiced with tubular knit goods or dyeing operations have no bearing on heat-setting nylon. The McElrath case, supra, is to the contrary.

The instant case gets very little support in the Stedman Mfg. Co. v. Redman, 4 Cir., 257 F.2d 867. Tubular knit goods were involved there. The processing here was to pre-shrink cotton knit fabric so that it would not change its shape after laundering. The case does show the existence of conventional machines to wet process and to dry tubular knit goods.

■ There is ample evidence corroborated by original written records to

show that Burlington Mills was practicing the use and method employed by defendant more than one year before the filing of the application for plaintiff's patent. The Court is fully convinced of the truth of it. The mode of proof meets the standard required in this Circuit, Dewees v. Whisenant, 4 Cir., 241 F.2d 413 and that of the Supreme Court. Smith v. Hall, 301 U.S. 216, 57 S.Ct. 711, 81 L.Ed. 1049.

A decree in conformity with this memorandum will be entered.